UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| EDWARD JEROME HARBISON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | NO. 1:97-CV-52 |
| ) | |
| RICKY BELL, Warden, ) | *Chief Judge Curtis L. Collier* |
| ) | |
| Respondent. ) | |

## **MEMORANDUM**

Petitioner Edward Jerome Harbison ("Harbison"), a Tennessee inmate under sentence of death, has filed a fee-paid petition for a writ of habeas corpus, pursuant to 28 U.S.C.§ 2241, *et seq.,* or in the alternative, a motion for relief from judgment, under Fed. R. Civ. P. 60(b)(6) and *Gonzalez v. Crosby*, 545 U.S. 524, 125 S.Ct. 2641, 2648 and n.4 (2005) [Court File No. 135]; as well as a motion for a stay of his execution, now scheduled for February, 22, 2007 [Court File Nos. 146, 148]. Harbison, who is represented by counsel, has also filed an application to proceed *in forma pauperis* in connection with any additional fees or costs, which is supported by his financial affidavit and a copy of his inmate trust account statement [Court File Nos. 136, 137]. Based upon the financial data included in those documents, it appears Harbison lacks the wherewithal to pay any subsequent fees or costs of this litigation. Therefore, the application will be **GRANTED**.

## I.  **PROCEDURAL BACKGROUND**

In 1983, a jury in the Hamilton County, Tennessee Criminal Court convicted Harbison of second-degree burglary, grand larceny, and first degree murder and, upon a finding of one aggravating circumstance, sentenced him to death for the murder. After the Tennessee courts denied his appeal and several collateral attacks (including post-conviction, habeas corpus, and coram nobis petitions), Harbison brought a petition for a federal writ of habeas corpus, pursuant to 28 U.S.C.§ 2254. Subsequently, the Court dismissed it. *Harbison v. Bell*, Civil Action No. 1:97-cv-52 (E.D.Tenn. Mar. 6, 2001) (order denying petition). The decision was affirmed on appeal, and the petition for a writ of certiorari which followed was denied by the United States Supreme Court. *Harbison v. Bell*, 408 F.3d 823 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1888 (2006). Following the entry of the Court's judgment denying his § 2254 application, he returned to the state courts to raise various claims, but did not receive relief. *See Harbison v. State*, No. E2004-00885-CCA-R28-PD, 2005 WL 1521910 (Tenn. Crim. App. June 27, 2005), *permission to app. denied* (Tenn. Dec. 19, 2005). Harbison now brings this instant pleading/Rule 60(b)motion, supported by various documents, including the record of those recent state court proceedings.[1]

## II.  DISCUSSION

Respondent Warden has filed a response [Ct. File No. 140], citing to 28 U.S.C.§ 2244(b) and arguing this instant filing amounts to a "second or successive" petition, which must be transferred to the Court of Appeals. The Respondent also argues that, even if treated as a Rule 60(b) motion, the motion states no grounds upon which to grant relief.

---

[1] The Sixth Circuit denied Harbison leave to supplement the appeal record to provide the materials from the state court proceedings because this Court had not had those materials when it ruled on his petition. *Harbison*, 408 F.3d at 836-37.

Harbison has submitted a reply [Court File No. 143] and, not surprisingly, offers several counter-arguments. First, he denies that his petition qualifies as a second or successive petition, reasoning that the two issues raised in this instant petition originated in the state coram nobis proceeding and, therefore, could not have been raised in his initial § 2254 petition. He takes the position that this petition, though numerically his second, does not qualify as a second or successive petition under 28 U.S.C.§ 2244(b).

His next suggestion is that, if indeed his petition is a second or successive one, it was filed within one year of the state court decision which furnished the factual predicate for his claims. His third argument is constructed in the alternative and rests on the ruling in *Gonzalez*. Harbision maintains he is entitled to Rule 60(b) relief because, just as the petitioner in *Gonzalez*, he is not asserting errors in his state convictions but instead, is challenging this Court's finding of procedural default—a ruling which prevented a merits review of his claims. The procedural-default ruling, according to Harbision, amounts to a defect in the integrity of the initial federal habeas proceeding because it was constructed on this Court's "erroneous fact findings and erroneous conclusions regarding state law; errors recently confirmed by the state court."

Since the Clerk chose to file Harbison's first submission in his previous habeas corpus case, Civil Action No. 1:97-cv-52 , the Court turns first to the alternative Rule 60(b) aspect of that filing.

**A.   Motion for Relief from Judgment**

    *1.   Applicable law*

Rule 60(b) of the Federal Rule of Civil Procedure permits a party to ask a Court to relieve him from a judgment and reopen a case for certain enumerated reasons, among them mistake, inadvertence, surprise, fraud, and newly discovered evidence. The sixth subsection of Rule 60(b) — the catchall provision under which Harbison brings his motion — allows relief to be granted for "any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(6).

3

In *Gonzalez*, the case on which Harbison primarily relies,[2] the Supreme Court addressed the applicability of a Rule 60(b) motion to § 2254 habeas corpus proceedings, concluding that a Rule 60(b) motion was permitted in such a context and could be harmonized with AEDPA's restrictions on second and successive petitions. 125 S.Ct. at 2649-50. The Court explained that, if, after a denial of a habeas petition, a Rule 60 motion attempts to advance a substantive claim, then it is properly characterized as a second or successive petition. Presenting a claim not offered in the original petition because of mistake or excusable neglect; seeking to submit newly discovered evidence not contained in the original petition; and asking for relief predicated on an alleged modification of law since the petition was denied — all illustrate a second or successive petition packaged as a Rule 60(b) motion. By contrast, an authentic Rule 60(b) motion is one which assails "some defect in the integrity of the federal habeas proceedings" but does not challenge "the substance of the federal court's resolution of a claim on the merits." *Id.* at 2648. For example, an assertion of error with respect to a previous ruling, such as finding of procedural default, which precluded a merits determination, does not constitute an attack on the disposition of a claim on the merits and, therefore, is properly raised in a Rule 60(b) motion. *Id.* and n.4. Finally, success on a Rule 60(b) motion hinges on a showing of "extraordinary circumstances," though these circumstances rarely occur in the habeas context. *Id.* at 2649.

2. *Characterizing the Instant Filing*

In his motion, Harbison maintains the Court incorrectly ruled that certain claims raised in his original petition had never been presented to the state courts, could not then be presented, and, therefore, were

---

[2] Harbison also cites to *Abdur'Rahman v. Bell*, 392 F.3d 174, 185-86 (6th Cir. 2004) as support for his position. However, the Supreme Court vacated and remanded that decision to the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") for further consideration in light of *Gonzalez*. *See Bell v. Abdur'Rahman*, 125 S.Ct. 2991 (2005). A decision which has been vacated cannot bolster Harbison's argument.

4

procedurally barred. He asserts that, following the entry of the Court's judgment denying his § 2254 application, he returned to the state courts and exhausted the two claims now offered in his Rule 60(b) motion—one alleging the Chattanooga Police Department's records were not disclosed to the defense, in violation of the rule in *Brady v. Maryland*, and the other alleging the attorney who represented him in his motion for a new trial and on appeal had a conflict of interest in that counsel also represented a primary suspect in the murder before being appointed to represent Harbison. Harbison submits the state court decision shows the above rulings were defective and those defects undermine the integrity of the judgment.

Because "[a] motion that... challenges the District Court's failure to reach the merits does not warrant [] treatment [as a successive habeas petition]," *Gonzalez*, 125 S.Ct. at 2651, the part of the motion attacking the Court's prior procedural default determinations, which prevented the Court from reaching the merits of the claims, is properly characterized as a Rule 60(b) motion. Therefore, it "can be ruled upon by [this Court] without precertification by the Court of Appeals pursuant to § 2244(b)(3)." *Id.*

### 3. *The Court's Previous Rulings*

In the memorandum opinion which accompanied the order dismissing the petition [Court File No. 101], the Court discussed the related doctrines of exhaustion and procedural default.

> A petitioner who has never presented a claim in the state courts and is now barred from returning to those courts to present his claim meets the technical requirements of exhaustion because there are no state remedies left to exhaust. Nevertheless, a petitioner in such a situation can obtain federal habeas review of the claim only if he can show cause to excuse his procedural default and actual prejudice as a result of the alleged constitutional violation. Likewise, where a petitioner presented a federal claim to the state courts but those courts declined to reach its merits because of his failure to comply with the requirements of a state procedural rule, he too must demonstrate cause and prejudice to secure federal review. Mem. Op., Mar. 6, 2001, at 12 (all citations omitted).

5

Thereafter, the Court found that "Petitioner's *Brady* claim, never before raised and now barred in state courts by state law, is deemed to be technically exhausted, but procedurally defaulted" [Mem. Op. at 19 (footnote omitted)]. The Court further found the claim of attorney conflict of interest had not been presented to the state courts either and, thus, it too had been procedurally defaulted[3] [Id. at 39].

### 4. *The Coram Nobis Rulings*

Three months after entry of the opinion, Harbison returned to state court, where he moved to reopen his post-conviction petition; filed an amended petition; and raised his *Brady* and attorney-conflict claims. Some two years later, upon Harbison's request, the motion to reopen was converted to a petition for a writ of error corum nobis. Following an evidentiary hearing, the trial court dismissed the petition as time-barred, and an appeal ensued.

In its subsequent opinion, the state appellate court pointed out that coram nobis was not the appropriate remedy for Harbison's claim that his attorney labored under a conflict of interest and, thus, it did not address the claim. As to the *Brady* claim, however, the state court explained Harbison would be entitled to coram nobis relief if: 1) there was newly-discovered evidence; 2) such evidence may have resulted in a different judgment had it been presented at trial; and 3) Harbison was faultless for failing to present the new evidence at the proper time. *Harbison*, 2005 WL 1521910, at *5. Though observing that the proper time for presenting such evidence is one-year after the final judgment, the state appellate court

---

[3] The Court also held, in the alternative, that "[w]hat Petitioner must do, but what he has failed to do, is to 'demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical'... and [w]here as here, the conflict is merely potential, it cannot furnish a basis for relief." Mem. Op. at 39 (citation omitted).

6

noted the one-year period is tolled where required by due process, pursuant to the rule established in *Burford v. State*, 845 S.W.2d 204 (Tenn. 1992). *Id.* at *4.

Next, the appeals court recounted that, according to the trial court's determinations, Harbison became aware of the alleged exculpatory evidence in October of 1997, but waited four years after receiving the police records to file his motion to reopen. *Id.* at *4. The state appellate court then determined Harbison had waited two years more before seeking to have the motion converted to a coram nobis action and that he had an "ample opportunity" to seek coram nobis relief but had "waited an unreasonable time to do so." *Id.* at *5. Finally, implicitly concluding that due process did not preclude application of the relevant one-year limitations statute, the Tennessee Court of Criminal Appeals affirmed the lower court's decision to dismiss the petition as time-barred. *Id.* at *5-6.

### 5. *The Alleged Defects*

#### a) The not-raised-before findings

Among the purported defects, as allegedly shown by the state court decision, were the Court's findings in its memorandum opinion that Harbison's *Brady* claim was "never before raised and now barred in state courts by state law"and his attorney-conflict-of-interest claim "was not raised in state court [and] there is no state court decision on the claim."

At the time the opinion was issued, the state courts had never been offered the opportunity to consider—nor had they considered—the *Brady* or attorney-conflict-of-interest claim. The Court was not in error in so finding and will not reopen the judgment on this basis. Moreover, the state court's *later* decision that Harbison's coram nobis petition was untimely, does not undermine, but instead verifies, this Court's conclusion of the existence of a state court procedural bar, at least with respect to the *Brady* claim.

7

### b) Findings of no-cause-and-prejudice

Another defect, according to Harbison, is the Court's conclusion that there was an insufficient showing of cause and prejudice to overcome the procedural default. This conclusion too, he maintains, is belied by the state court decision addressing his coram nobis petition.

#### i) *Evidence of Cause*

This Court found, based on the record then before it, that the police department files became available in January 1992; Harbison waited five years—until 1997—to request them; and he had not shown cause for failing to seek those files. While addressing Harbison's motion to alter or amend, the Court also noted "evidence purporting to show the existence of a conflict of interest became available to Petitioner during his post-conviction appeal . . . There is no reason why Petitioner's post-conviction attorneys could not have obtained those files" [Court File No. 118].

However, during the hearing on the coram nobis petition, Harbison's post-conviction attorney testified, without contradiction, that a subpoena directed to a homicide detective with the Chattanooga Police Department did not produce the police files at the evidentiary hearing on the post-conviction petition; nor did counsel's two additional requests—one directed to the police department and the other to the District Attorney's Office, both of which were made while the post-conviction case was on appeal [Court File No. 135, Attach. "C," T. of October 13, 2003 Coram Nobis Hrg. at 93-106]. Counsel also stated the police department did not respond to the later requests, but the D.A.'s office indicated that it had no materials or information in its files not already presented by Harbison at the post-conviction hearing [id.]. The state court record contains copies of those two letter requests, as well as of the subpoena duces tecum [id., Exhs. 16, 17; Attach. I].

As noted, the stated evidence was not presented in the initial habeas proceedings while the Court was making the cause-and-prejudice inquiry with respect to the *Brady* claim. Certainly, the testimony and evidence offered at the coram nobis hearing by Harbison's post-conviction attorney and now offered here involve factual matters which could have (and likely would have) led the Court to reach a different conclusion as to the existence of cause. However, even assuming this evidence demonstrates adequate cause for the procedural default, such a finding would not help Harbison. This is so because Harbison must also demonstrate prejudice and because there is no evidence to offset the Court's prior finding that he had not shown prejudice as a result of the withholding of the evidence.

ii) *Evidence of Prejudice*

To be more specific, the Court found that the information contained in the police files did not constitute a *Brady* violation because, *inter alia*, it was not material. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999) (A petitioner alleging a *Brady* claim must show the evidence was favorable, suppressed by the state, willfully or inadvertently; and material because prejudice ensued.). The Court concluded the information was not material because there was no reasonable probability of a different result if the evidence had been disclosed to Harbison [Mem Op. at 22, 24-26]. The Sixth Circuit agreed with these findings, citing Harbison's confession as strong evidence of guilt, "which this new evidence was unlikely to overcome." *Harbison*, 408 F.3d. at 834. Nothing in the Rule 60(b) motion or the state court record of the coram nobis proceedings invalidates these conclusions or raises any genuine question regarding these findings.

With respect to the attorney-conflict-of-interest claim, while the Sixth Circuit found the Court's procedural default analysis relevant, it affirmed the Court's decision to deny the claim based on Harbison's failure to show any prejudice or impairment of his interests stemming from his attorney's alleged conflict of interest. *Id.* at 836. *See also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (A petitioner claiming

ineffective assistance of counsel must show not only deficient performance but also resulting prejudice); *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (A Sixth Amendment violation is established by showing "the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other;" it is not enough to show a conflict which is merely hypothetical.).

Rule 60(b) relief is not warranted with respect to the alleged defective cause-and-prejudice findings. Though the state appellate court determined the conflict claim could not be raised in a coram nobis petition and, thus, did not rule on it, this Court held, on the allegations and evidence then before it, that Harbison could not be granted relief on the claim—not only because of the procedural default but also because he had failed to show his attorney had an actual conflict of interest, as opposed to a speculative conflict. The Sixth Circuit agreed with the latter finding. *Harbison*, 408 F.3d 823, 836 (finding that Harbison has not demonstrated prejudice resulting from counsel's alleged conflict). While his assertion of "no available state remedies for his attorney-conflict claim" may well have been confirmed by the state court opinion, it remains that Harbison has not submitted anything to undercut the integrity of the Court's finding that, at the very most, the asserted conflict was merely speculative and provided no basis for habeas relief.

c. The Court's Alleged Misapprehension

Harbison suggests the state court decision shows the Court misapprehended the procedural posture of his petition. The Court infers he is arguing that, contrary to the Court's finding, his claims were not procedurally-barred since he was permitted to seek relief in the state courts. If this is his intended suggestion, it is rejected. The state appellate court's opinion confirms the Court did not misapprehend the procedural posture of this case because, ultimately, the state court found the *Brady* claim had not been raised at the proper time and the attorney conflict-of-interest claim had not been raised in the proper manner.

6. *Extraordinary Circumstance*

A habeas petitioner seeking relief under Rule 60(b)(6) must "show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 125 S.Ct. at 2649. According to Harbison, the Court's purported misapprehension as to the procedural posture of his claims constitutes an extraordinary circumstance and justifies the reopening of his original habeas case. Again, this Court found the claims to be procedurally barred and the state court's opinion supports the finding. At any rate, contrary to Harbison's allegations, the findings of the state courts do not amount to an extraordinary circumstance. *See Artuz v. Bennett*, 531 U.S. 4, (2000) (later interpretation of law which demonstrates incorrectness of dismissal of a § 2254 petition as untimely is not an extraordinary circumstance). Certainly, those state court rulings in no way nullify this Court's holdings.

**B.    Petition under 28 U.S.C. § 2241, et seq.**

As an initial matter, Harbison did not designate 28 U.S.C. § 2254 as the statutory authority for his submission, but instead, invoked "28 U.S.C. § 2241, *et seq*."—the general habeas statute— as the statutory source. Perhaps the reason for the imprecise labeling is that, under 28 U.S.C. § 2244(3)(A), a prisoner must obtain authorization from a court of appeals before a second or successive petition may be filed in a district court. As noted earlier, Harbison's original § 2254 application was dismissed; the decision was affirmed on appeal; and the Supreme Court denied his request for certiorari review. Despite the vagueness in its labeling, this filing is governed by 28 U.S.C. § 2254 and all related statutory restrictions. *Byrd v. Bagley*, 37 Fed.App'x 94, at 95 (6th Cir. Feb. 20, 2002) ("We agree with those circuits that have held that regardless of the label on the statutory underpinning for the petition, habeas petitions of state prisoners are governed by 28 U.S.C. § 2254.") (unpublished disposition). *See also Rittenberry v. Morgan*, - - - F.3d - - -, 2006 WL 3230278 , *5 (6th Cir. Nov. 9, 2006) (holding "that section 2244(b) applies to any habeas corpus petition

seeking relief from custody pursuant to a state court judgment,"even where a petition is brought under § 2241).

### 1. Applicable law

A petition which is filed after a prior § 2254 petition has been dismissed on the basis of a procedural default stemming from a failure to exhaust state remedies, where the limitations statute has now run on those remedies, constitutes a dismissal on the merits. *See In re Cook*, 215 F.3d 606, 608 (6th Cir. 2000). Hence, any § 2254 petition filed thereafter is "second or successive" and must be authorized by the Sixth Circuit. *Id.*

### 2. Analysis

Both claims raised in this petition were also contained in the original petition filed in this Court and were dismissed on the basis of procedural default.[4] Harbison did not present those claims to the state courts "before the time for him to do so [] expired." *Id.* at 607. Indeed, the Tennessee Court of Criminal Appeals has issued an opinion confirming the *Brady* claim was not timely offered to the state court. Accordingly, this instant filing is a "second or successive" § 2254 petition, and, under 28 U.S.C. § 2244(b)(3), it must be and will be transferred to the Sixth Circuit for an order authorizing this Court to consider it.

---

[4] This Court dismissed the attorney-conflict claim on the additional basis that Harbison had shown nothing more than a speculative conflict—not an actual conflict. On appeal, the Sixth Circuit observed that a conflict which was "merely hypothetical"could not establish a Sixth Amendment violation and went on to find no prejudice had resulted from the alleged conflict. *Harbison*, 408 F.3d at 836. Moreover, while the Sixth Circuit did "not directly reach the merits" of the *Brady* claim, it noted that since the "cause and prejudice discussion parallels requirements for the *Brady* analysis" and since Harbision had not demonstrated cause and prejudice, he had failed to establish a *Brady* violation in the first place. *Id.* at 834-36.

## C. Motion for a Stay of Execution

Harbison moves to stay his execution to allow sufficient time to consider his petition on the merits. According to Harbison, the stay is justified for five reasons: 1) this petition is his first and only opportunity to have his *Brady* and attorney-conflict-of-interest claims reviewed on the merits; 2) his petition offers substantial issues upon which he is likely to prevail; 3) irreparable injury will occur absent a stay; 4) a stay will not prejudice the Respondent; and 5) the public interest will be served. He cites to several cases as support for his motion, even though those cases involve first petitions, whereas, this instant petition is his second. Harbison also proposes that, irrespective of whether this petition is his second-in-time, the Court should treat the petition as though it were his first.

The Respondent objects to the stay, correctly pointing out that *Gonzalez* rejects the idea that a Rule 60(b) motion is to be treated as a habeas corpus petition and arguing that 28 U.S.C. § 2251[5] does not apply to a Rule 60(b) motion. Harbison, however, has not based his motion for a stay on his Rule 60(b) motion, and, thus, has abandoned this issue. With respect to the habeas-corpus petition, the Respondent argues it is a second or successive habeas corpus application, which under § 2244(b), must be transferred to the Sixth Circuit.

### 1. *Applicable law*

The Supreme Court has held "[a] stay of execution pending disposition of a second or successive federal habeas petition should be granted only when there are 'substantial grounds upon which relief might be granted.'" *Bowersox v. Williams*, 517 U.S. 345, 346 (1996) (citing, *inter alia*, *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983)). It has also held "[e]ntry of a stay on a second . . . petition is a drastic measure, and . . . it is 'particularly egregious' to enter a stay absent substantial grounds for relief." *Id.* (citation omitted).

---

[5] This statute permits issuance of a stay where a habeas corpus application is pending.

*2. Analysis*

Having already found this to be a second or successive petition, this Court agrees with the Respondent's position on this issue. Absent authorization from a court of appeals, a district court lacks jurisdiction over a second or successive petition. 28 U.S.C. § 2244(b)(3)(A). The Sixth Circuit has not authorized the filing of this petition; thus, this Court lacks jurisdiction over the case. Since this Court has no jurisdiction over the petition, it likewise has no jurisdiction to stay Harbison's execution. *See Kutzner v. Cockrell*, 303 F.3d 333, 338 (5th Cir. 2002) ("[A] federal court is without jurisdiction to consider a request for stay of execution in connection with a successive habeas petition in the absence of express authorization by [a court of appeals] pursuant to 28 U.S.C. § 2244(b)(3)(A)."), *cert. denied*, 536 U.S. 978 (2002). Even if jurisdiction lies, the petition does not justify a stay since, as can be seen from the foregoing discussion, it contains no "substantial grounds on which relief might be granted." *Bowersox*, 517 U.S. at 346.

## III. CONCLUSION

As set forth above, the "motion" facet of Harbision's submission, which attacks this Court's prior ruling of procedural default, warrants no Rule 60(b) relief and will be **DENIED**; the "habeas corpus petition pursuant to § 2241, *et seq*." part of his filing is, in substance, a second or successive petition over which a district court has no jurisdiction absent precertification by the court of appeals and, in light of Harbison's approaching execution date, the "petition" part of the filing will be **TRANSFERRED** to the Sixth Circuit Court of Appeals for a determination as to whether, under 28 U.S.C. § 2244(b)(2), this successive habeas petition may be filed; and finally, his motion for a stay of execution will be **DENIED**.

A separate order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**